Have a seat please, I'm sorry. Here. Case number 13-2243, Tacori Brooks v. Bernard Toolie, consolidated with 13-2552, Nora Lermina v. James Campbell. Thank you. So we have kept you waiting a little bit this morning, so I did want to apologize on behalf of the court and indicate to you that you saw that we had an administrative matter that we had to deal with in another case. We also had to take a couple minutes this morning to meet with representatives of the Mexican Supreme Court, but we left them to come see you, so our apologies. And if the attorneys who are going to present could approach the podium and identify themselves, we'll get started. May it please the court, my name is Douglas Graham. I represent the plaintiff, Kimberly Wolfson. May it please the court, Assistant State's Attorney Lauren Klein, representing County of Cook, on behalf of Lienholder, Stroger Hospital of Cook County. May it please the court, my name is Jeffrey Brown. I represent Nora Lermina. Have you folks discussed among yourselves the order of presentation? We have not, Judge. We have been speculating, but there has been no serious agreement. I expect that my presentation will be the shortest. All right. Well, why don't we start off indicating that we'll take ten minutes for the first two presentations and ten minutes for the last one, and then we'll see how it goes. Okay? Ten minutes for Mr. Graham, ten minutes for Stroger, and then Mr. Brown, actually Mr. Brown will give you 15 minutes. Thank you very much. Okay? I appreciate it. All right. Are we going to hear from Mr. Graham and Mr. Brown first? We're going to hear from, well, how would you like to proceed? Well, I'm an appellant, and Mr. Brown is an appellate. All right, fine, whatever. Go ahead. And of the ten minutes, I'll take about two, unless the court has any questions. I read over my brief this morning, and really everything I had to say is in there. This is an issue as to whether the application of the arithmetic mechanics that were set down in the case of Stanton v. Ray should be applied in the cases that we have before the court this morning here in the First District. And I contend that they should. For one thing, I think it's a very beneficial decision. I think attorneys will take cases, plaintiffs will get attorneys and take cases when they are at least assured of some return. The Stanton case was an extreme case where if you applied the usual rule, the sort of rule of thumb rule, the plaintiff would not see so much as a nickel. Well, let me ask you something, Mr. Graham. In the county's brief, they just briefly touch on this idea that under the Attorney Lien Act, there is a lien created on not only the fees, the attorney fees, but the costs as well. Do you agree with that or not? I think it is. You agree that the costs are under the Attorney Lien Act, the statute creates a lien for the attorney for not only his fees, but the costs that he or she had to put forth in order to present and successfully argue, win the case at whatever level. I've seen it done that way. I don't know for a fact. Is there a lien created by the statute for costs? I don't know. You don't know. All right. Well, we'll ask Mr. Brown what his position is. Had the court in the Stanton case, the statute envisions, at least the way I read it, that whenever there are medical liens that exceed 40 percent, that in that case, then the attorney liens shall be limited to 30 percent.  Well, then 40 percent, if medical liens are greater than that, only 40 percent can be dispensed for those liens, 30 percent for attorney liens, and then the plaintiff will always have 30 percent. That would be... But in Stanton, what the trial judge did was he imposed those costs on the plaintiff, and then the appellate court reversed. Correct? Isn't that... Yeah, those costs are always on the plaintiff. But if the costs incurred are a lien and that the statute envisions that the attorney has a lien in the amount of its costs and legal fees, then you would be able to divide what's remaining from a settlement or a verdict or whatever so that you'll always have 30, 30, and 40. And it's not an issue in this case. But in the Stanton case, what the appellate court ended up doing was taking those costs and putting them on to the health providers. Didn't the court essentially do that? Well, in the Stanton case, the costs were larger than I've ever seen. Yes, that's right. I mean, sometimes... It took this, to some extent. Well, anyway, you don't really have an opinion one way or the other, then, about whether or not the Attorney Lien Act actually creates a lien in favor of the attorney for his or her costs in addition to their attorney fees. That's correct, Your Honor. I've never had the issue come up. So I can't really say. Well, then let's get to this other issue, and that is aren't these costs being transferred to the medical providers by the method that was used in the Stanton court and improperly so? Costs? I don't think so. Well, that's exactly what they did. They took it off of the top immediately. They did. And so who ends up paying? Well, the costs are cashed outwards by the attorney. They are the basic responsibility of the client, and they have to be returned. Yeah. No, I'm not having a problem with that, but you have the Attorney Lien Act that suggests that those costs are a lien, and then you have the Medical Lien Act. And that act says that whenever the medical, either professionals' or providers' liens are more than 40%, then in that instance, the attorney liens will be limited to 30%. Well, yeah, I agree that the statute does really actually, yeah, the statute probably should deal with the cost issue. But just the costs are usually rather nominal in any case, and Stanton is such an exception in this case. I think that costs kind of got slipped in under the wire when they were trying to figure out where the money should go in these cases. I don't, I'm not really, I really don't have an opinion on that. Well, do you have an opinion on whether or not the language of the Medical Lien Act tracks the language of the Attorney Lien Act? I don't think it does. I'm talking about this, whenever the liens exceed 40%, from the verdict, the judgment, the settlement, whatever the rest of the words are. Aren't those the same in both statutes? The Attorney's Lien Act doesn't set percentages, as I recall, it just says that there's a lien. And it's true, I can't remember seeing the word costs in there, I can't remember. Oh, well, it's in there, but anyway. Usually the costs are nominal, and they really don't get much consideration in the courts. No, but that's really kind of what we're dealing with here. It is. So, to summarize, I think that, I think Stanton v. Ray is correctly decided. I think that it will encourage plaintiffs who have a case where there's a serious injury by someone with minimal insurance to proceed and file suit, in spite of the fact that there are some medical bills that would like to be asserted as lien, because Stanton will limit that. The medical providers will, in that case, get something for their investment as lien return, as opposed to having nothing if the plaintiff decides that it's uneconomical to pursue a suit. So I think, to some extent, the Stanton formula works in favor of hospital liens. Thank you, counsel. We think it would be helpful to hear from Larmina at this point. Sorry, counsel. You're ready, Mr. Brown. I feel like I have the weight of the entire plaintiff's bar on my shoulders today. Good morning. Historically, we had a situation before the Stanton was amended in which plaintiffs or lawyers, in the face of eight separate liens by health care providers and health care institutions, could render nothing to either the plaintiff's attorney or the plaintiff himself. The court, the legislature, I think, attempted to remedy this situation and recognized that in order to advance the very public policy that informs the act, we have to have a sufficient number of attorneys and clients who are going to get something, or there is going to be no benefit to the health care providers, because the plaintiff's bar will not take cases in which they could get nothing, increasing the calculus of risk that already exists on the plaintiff's bar, and that's why I amended my record to include the statistics from the jury verdict reporter. As it is, plaintiff's bar only wins about 52 percent of the cases. So the calculus of risk here is very real. So if you include in that the opportunity wherein they get nothing, they're simply not going to prosecute these cases. Right. Well, let me ask you the questions that the statute, both the Attorney Lien Act and the Medical Lien Act provide that the amounts are to be taken from the verdict, settlement, compromise, the language is identical. Yes, verdict, settlement, judgment. The language is identical. Yes, it is. So is that something that we look at today or not? Yes. In terms of interpreting? I think it is regarding the limitations on the providers. The argument was made by Stroger, and I don't call them the defendant because they're not a defendant, they're a lien holder. The argument was made by Stroger that that somehow indicates, that language that you've tracked, somehow indicates that they're entitled to the amount from the total recovery. That just extends to the scope. Total, the word total is not in there. Right. But what is in there is verdict, judgment, settlement, compromise, and I'm forgetting. No, those are the four, actually. And what I'm trying to say is, in my brief, is that pertains to the scope of the lien. The lien, if we read the Cooper decision, says the lien is only created when there is a recovery. All right. So I think that what that references is the broad scope of when the lien is created. It does not implicate, as I think the court was getting at, as far as the Attorney's Lien Act, and forgive me if I'm being presumptuous here, is that somehow the attorney's costs and expenses are to be included in the calculation of the attorney's fee. Well, if you look at the Attorney Lien Act, the question, and I don't believe it impacts our decision, but if the intent of the legislature in situations where medical liens exceed 40% was to limit the attorney liens to 30%, the plaintiff would always have a recovery of 30%, depending on how you interpret what is included in the notion of an attorney lien. Do you have any, in passing, the county has suggested that the Attorney Lien Act, that the lien created in favor of an attorney is not only their fees, but the costs that he or she had to expend to prosecute the case, to get it to whatever position it is, whether settlement, verdict, judgment, compromise, the point being that when you have liens that are going to be greater than 40%, the attorney lien will be limited to 30%. Right. And in Stanton, had the court imposed that amount, the 30%, if the attorney lien includes the costs and fees, when an attorney, perhaps the costs are even more than the verdict, okay, that was accomplished. Yes. The attorney fees and costs, 30%. The plaintiff will always recover 30%. And the attorney. And the attorney, yes. And the problem is, is that the interest of the attorney and the plaintiff are coexistent. They are inextricably woven. The Stroger's interpretation of embedding, as I put it in my brief, those costs and expenses in the calculation of the attorney's fee within the ambit of the 30% limitation would make it virtually impossible for the plaintiff's attorney, unless there were no costs, to get a 30% fee. And if we deduct them and then do the calculus, we're talking about maybe getting less than 10% fee. What I'm saying is, in my brief, is that's why the lien priority language that I refer to in the brief, that nothing in this act shall affect an attorney's lien priority to that effect. I think that just means that the attorneys have to be paid first. Not how they're paid, but they have a first priority over anything else that gets paid. Now, you don't agree. I don't think it gives anything more than that the first ones to get paid are the lawyers. Ahead of the health care provider. Yes, absolutely. I think that's all that section provides, is that the first money, the first lien, in other words, that the attorney has to be paid first. That's how I interpret it, but I don't give it any more than that. Right. But what I think the implication of your earlier question was, is that the cost, because the lien is co-extensive, or extends to cost, remember that the lien, there are two things. First, the lien says plus costs and expenses, as if to suggest that all we're doing is trying to protect those aspects, as well as the fee. Let me ask you this question, a very simple question. Yes, sir. The lien act talks about the fees plus costs and expenses. Yes. So the plus has to be in addition to what the attorney's collecting for his fee. And I absolutely agree, and that's just what it is. Yes, I agree with that, too. And I was just getting to that, Judge. I absolutely agree with the cost. I know, but you're taking a long time to get to that. I'm sorry. Okay. I mean, that's the way it's been historically before you were born. And that is doubtlessly true. It's been that way for the 27 years I've been practicing. So 56 that I've been around, it's been that way. Okay. I will defer to your question. But the question really, and I've probably gone off on a tangent. The question is, if the settlement amount is $27,000, the question is, are we going to deduct the attorney fee and costs first, and then go on to the medical liens or not? And your position is that that's the way to do it. And my position is that if you are going to protect, sufficiently protect the attorney's interest in prosecuting the case in the first place, you have to interpret it that way. That's why in my portion of the brief where I lay out the alternatives to Stanton, they are so deadly for the plaintiff's bar. I'm not asking you to do me a favor on behalf of the plaintiff's bar. I'm saying to you, these cases won't be prosecuted, and there will be less money for the lien holders. We have competing interests, though. Yes, we do. There's also a strong public policy behind the Medical Lien Act that encourages hospitals to provide health care to individuals who don't have insurance. And what I'm saying is. And so it's a balance. It's a balance. And I'm not disagreeing that it's a balance. And in all deference to my colleague, this is why I personally, after thinking about this over and over again, there should be some, and I'm going to admit something, there should be some flexibility that was exemplified, I think, by Judge Kogan in her order to allow her to remit, if you will, but do the calculations so that it's equitable. And I'm not imposing an equitable veneer on this, because I think that the act, the competing interest here is ensuring that people have legal representation, A, that are entitled to it, and, B, that will create a rest for the health care providers to take a hold of in the first place. If you look at a factual scenario like Stanton that perhaps isn't the, you know. Typical one? Yes. Should that be the guiding decision to sort of try to create a rule that works in most cases, as opposed to one where the costs far exceeded the actual amount that was recovered? Well, but even as I tried to show you in my brief, Judge, even if the costs were, in my case, they were about 15 to 20 percent of the settlement, all right? And if we do it, and I specified this in my numbers, I specified it with a little too much brevity, but if you do it the way they want you to do it and you create a hard, fast rule that accepts that, then what's going to happen here is that the attorneys will get virtually nothing. Because what they have to. The attorneys have to get paid first. But they have to be paid under. But we can't shift necessarily. But then where do they go? What do you mean where do they go? I'm sorry. They have to. Where do the costs, if the costs aren't amortized among all the health care providers who are receiving the money, and before the plaintiff, who already has to pay costs at the end of the day anyway, then where do those costs go? Do they go against the attorney's fee? Do they go against the plaintiff's recovery? Or are they amortized? And it is an imperfect statute. That is a given. I mean, this statute is less than a paradigm of clarity. What I was going to ask you was, you make a very compelling, equitable argument. But my question is, where do you find support for your argument in the language of the statutes? Well, which? Are you talking about the argument I just made as the compelling one? Okay. It isn't an equitable argument. The attorney's lien statute. Well, I heard you say equitable. No, and I said I don't want to put the veneer on that. Well, you're making an argument that has to do with what the end results are and how the end results are not desirable because it would discourage attorneys from bringing cases, and therefore it would limit the ability of plaintiffs to have access to the courts. Right. So that's fine. But that's an equitable argument. My question is, where is the support for your argument in the statutory scheme? Okay. The Attorney's Lien Act, Judge, was, in my view, not just promulgated to ensure that attorneys are paid. It was also promulgated to ensure that there is legal representation for people, and those are coextensive aspects. You can't have one without the other. So my position would be certainly nothing, nothing that Stroger has submitted to this court statutorily justifies the construction that they have advanced vis-à-vis attorney's fees and costs being attributed to plaintiff's counsel or the plaintiff. Nothing in it. Do costs, do $20,000 worth of costs justify a case that settles for five? I mean, that's taking it to a real extreme. Yes, it is. And, Judge, you know. And in that Stanton case, don't you have kind of that situation, maybe not to that extreme? Can an attorney justify those kinds of costs? Judge, here's the thing. If it's left to the vagaries of a jury, who the heck knows? It doesn't necessarily mean that the case is meritless because it could be the skill of the attorney. I mean the skill of the plaintiff or the defense attorney. So I don't think we can judge merit simply on result. I just don't think there's any intent here that you've explained now that shows that somehow when we calculate, you know, the amount of the lien, that somehow it's going to shift over to the health care providers by taking it. You have a pie. And what you're suggesting is that we first take out everything that involves the attorney lien and costs. Then from that smaller pie, we deduct the liens. And I don't see anything in the statute that suggests that type of arithmetic. Okay. And, Judge, all I would do is go back to the lien priority language that I pointed out to the court. I understand the court's construction of it. But my construction of it is a bit broader than that. And it allows for those costs to be attributed in the manner that I have suggested. So the answer to my question is that your position is that the language of the attorneys lien act that speaks to the attorney's priority is where you find support in your position today. I believe so, Judge. And I think that both the legislative history that is quoted by the, by Stroger, extensively shows how important incentive was to the promulgation of this act. The legislature have clearly set out exactly what you're suggesting, that the attorney liens and costs shall be deducted first from any recovery, judgment, settlement. And couldn't they have easily provided that then the medical liens would be deducted only after the attorney lien and costs had been subtracted from the whole? But they wouldn't need, if they interpreted the lien statute, the attorney's lien statute, to embrace the costs and you have the priority, then all they're doing is, then all one would be doing is calculating the attorney's fees to the 30 percent limit and saying, well, this cost is part of that attorney's lien anyway, so we deduct it in advance, as you said, it should have priority. And as far as the legislature is concerned, as I... Forgetting about the costs, that's really not an issue in this particular case. Had Stanton done it, the arithmetic that way, the plaintiff would have recovered 30 percent. It's not an issue in our case. The issue in our case is how, where do you take those fees and costs from? A pie that consists of the total settlement amount or from a pie that's been, that has already had a piece taken out? And I think the language doesn't suggest that interpretation. I think the legislature could have easily have said that had they wanted it to be divided up the way that you're suggesting. And I would suggest, Judge, that given the precedent of the Cooper case, if the legislature wanted to do that, I mean, the converse argument is also true, they certainly could have specified that the costs were to be attributable ahead of the attorney's lien or just behind it or just behind the health care providers. They didn't do that either. So what we are left with is a juridical construction of that act under Cooper. And by the way, under the prior act, the same lien priority language that I rely on in my brief was present in the prior act as well. And we have to assume then that the legislature, as I said in my brief, accepted that construction as part of the act. And if that's true... How do you get out from under the Wendling and the Maynard case? As I, okay, that's a great question. And it's very easy. Wendling dealt with the common fund doctrine. There is a marked distinction between the common fund doctrine and adjudication of attorney's liens under the act. Okay? Yes, but isn't the net effect of what was done here by one of the judges is to shift all those, the attorney lien and costs, over to the medical providers? Right, but the Wendling case didn't rely on the result. It relied on the fact that the attorneys, I think, implicitly, were making an end run around the Hospital Lien Act and trying to claim a third plus cost. And that is what the court found offensive. Now, the court did never say that under all circumstances, just like the legislature have never said, that the health care providers are to assume no costs or no fees in all circumstances. And they easily could have said that. They limited their reasoning to the common fund doctrine. But the result here is that you are taking away from the entire pie before you get to the medical liens at all. I mean, I don't know where the arithmetic is coming from. Well, Mr. Brown, I think what I've done is I've given you quite a bit of Mr. Graham's time, and so I think we're going to hear from Stroger now. That's fine. And I'm going to ask you to come back up to make further remarks if you want to. Thank you, Judge. I appreciate that. I would ask you at this time just to reserve some time for me after any rebuttal that counsel may have, maybe four minutes or so. We'll give you two. Thank you, Judge. I'm here representing Cook County on behalf of Lien Holder Stroger Hospital of Cook County. The issue is whether the Health Care Services Lien Act allows for subtraction of attorney's fees and costs from the settlement before calculating the amount to satisfy health care service liens. And Cook County's position is that it does not allow for that. Number one, it doesn't allow for that because of the plain language of both the act and the Attorney's Lien Act. Number two, it does not allow for that based on stare decisis decisions of the Illinois Supreme Court. Here, let me just stop you for a minute. The Attorney's Lien Act says fees plus costs and expenses. Yes, Judge. I mean, to me that seems very, very clear. Judge, the Attorney's Lien Act at ILL-REV-STAT 1990, Chapter 13, Paragraph 14 added the language plus costs and expenses. That language was added by Public Act 86-1156, Section 1. After that amendment, the case of Carlson v. Powers at 587 Northeast 2nd, 1240 in 1992, held that the Attorney's Lien includes fees and costs. Moreover, the Scholten v. Schneider case at 173 Illinois 2nd, 375 in 1996, further stated that the Attorney's Lien includes fees and costs. So that language. So that's a gimme. Pardon, Judge? I said that should be a gimme. Fees and costs belong. I think it's clear that the Attorney's Lien Act, by continuing to have the language plus costs and expenses, makes it clear that those are included in the Attorney's Lien, as they were in 1990. All right. Also, for the first time in 2003, both statutes, the Act and the Attorney's Lien Act, put a cap on attorney's liens of 30%. When the medical liens are greater than 40%. That's when the cap comes into play. Yes. When the total amount of the health care service liens meets or exceeds 40% of the total recovery, whether it be a settlement, a verdict, a judgment, an award, or a compromise, then the attorney's liens, not fees, not costs, but liens, which include both, are capped at 30%. This was for the first time in 2003. Both statutes have that cap. The reason for that cap was to ensure that the plaintiff would get a minimum of 30% of the settlement or verdict or judgment. That cap, because of that cap, in fact, Stanton Court basically states that that cap basically limits attorneys to accepting 30%. And they didn't think that was right. But that's exactly what that cap was meant to do. When the Act and the Attorney's Lien Act were enacted, the Chicago Bar Association, the Illinois State Bar Association, the Trial Lawyers Association, all agreed to the percentages set forth in the Act and the Attorney's Lien Act. The Stanton Court So what do we do, accepting that, that the cap is 30%, including costs and expenses, what do we do with the lien priority that is found in the Attorney's Lien Act? Saying that the Attorney's Lien includes the cost doesn't answer the question that's before us today. The question is, when do you do it? When do you do it? Do you do it on the total amount? Do you take the 30% off the total amount and then you take the 40% off the balance? Or do you take 30% and 40% at the same time? Okay, Judge, I'm glad you asked that question. That's the bottom line. Yes, there is no priority of liens anymore. By putting that 30% cap on attorney's liens, which include fees and costs, there is no priority anymore. Well, then I don't think I'd go along with you on that. One, because the Attorney's Lien Act says specifically that nothing in this Act, or it's the medical lien, nothing in this Act shall affect the priority of attorney liens. It says it. It's part of the statute. Yes, Judge, but it doesn't state that attorney's liens have priority over health care liens or that health care liens have priority over attorney's liens. But by saying that nothing in this Act shall affect the priority of an attorney lien is saying that nothing shall affect their priority. I think priority means one thing. I mean, that's the plain and ordinary meaning. That's what it is. Judge, there are certain cases where an attorney's lien does take priority, but the Health Care Services Lien Act is not one of them. Well, I think it does. I think they get paid first, and it's limited to 30%. I think you're off base on that, but I will say that in my many years, when the courts had total discretion with hospital liens like the county hospital, they never gave the county anything. And that's the problem. Judge, with respect to priority of liens, the Health Care Services Lien Act takes the 100% recovery. They divide it with a maximum of 40% for the health care lien holders in certain situations, a maximum of 30% for attorney's liens, which include fees and costs, and a minimum of 30% for the injured person plaintiff. Because of that finely tuned balancing by the legislature, which actually was an enactment of the agreement by all the interested parties and based on all the competing policy interests of all of these parties, agreed to by the bar associations, by the Illinois State Medical Society, by the Illinois Hospital Association. Because of that, because of this finely tuned balancing of that 100% recovery, priority is no longer an issue. The attorneys are going to get a cap of 30%, and that's what Stanton didn't like. But Stanton, unfortunately, can't legislate. The competing policy interests are better left to the legislature to determine and balance. And that... Well, it's a badly written statute. That's what it's supposed to mean. Judge, the purpose of the Attorney's Lien Act is to protect attorney's interests to be paid, but it's not to shift payment of attorney's fees from the client to innocent third parties. And that can be found in the case of Peterson and Haupt v. Main Street Village West, which was a case in 2012 by this court. Only the lien holder can reduce or waive the lien. That's at 23-10C of the statute. A trial court has no discretion to reduce a hospital lien below one-third of the settlement. That's in the case of Wade v. Rehab Institute, another First District case. And the circuit court shall adjudicate the rights of all interested parties and enforce their liens. That's at Section 23-30 of the Act. Again, there's no... It's not necessary to have priority of liens anymore. There was language dealing with priority of liens in the Golden Hospital Lien Act. There isn't anymore in the Health Care Service Lien Act because it's not necessary. That just brings us... We're going around in circles. That just brings us back to what Justice Stanton just asked you. You said there's no reason to have priority of liens anymore. The statute specifically speaks to lien priorities. So is that just surplusage now? No, Judge. It refers to other situations where attorney's liens may have priority. It does not refer to the situation involving the Health Care Services Lien Act. And the Health Care Services Lien Act and the Attorney's Lien Act, neither one of them state what the priority is between an attorney's lien and a health care service. Well, then give us an example of a situation where there would be a priority of liens other than when we're dealing with health care liens. I cited two of them in my brief. I believe one of them, if I'm not mistaken, involved child support. I think the other one may have involved... I can't recall exactly, but it may have involved a retirement benefit situation. But is the priority issue really... I mean, this case isn't hinging on whether or not the attorneys are paid first. It's where you're taking that from. Either a pie that consists of a verdict, judgment, settlement, compromise, or you're taking it from a verdict, judgment, compromise, settlement, after first deducting the attorney liens. That's all. And I mean, that language could easily be put into the statute. It's not there. So really, I don't see this case as, even though I got off on a different track, it's not about the priority, the attorneys were paid here, and it's not about whether or not you take those costs as part of the 30%. It's really whether you take those from this whole pie or a pie that's less. Yes, Judge. That's the issue. That's exactly correct. And the statute, the plain language of the act is very clear that the lien attaches to the settlement, verdict, judgment, et cetera. And out of that 100% recovery, which is the rest, that there's definite percentages that each interested party gets. And there's no plain language in the statute talking about a gross recovery or a net recovery or reduction of fees or reduction of costs. There's absolutely no language in that statute involving that. And if they had the legislature wanted to do so, they most certainly could have put that in. They could have used the words fees and costs, but they didn't. They used the term attorneys lien consistently throughout the Health Care Services Lien Act. Also, there is a difference between subrogation liens and health care services liens. Creditors are not limited to recovery of the rest settlement. That's at the act of 23-45. A lien holder may seek recovery of the amounts of its reasonable charges that remain not paid after lien satisfaction. That's in the act. That is different from subrogation liens, which are limited to the rest, which is whatever the recovery is that's coming in. Debtor-creditors have a different kind of relationship where the creditor can seek collection through all available means. They can get some recovery from... So after you get your part of the pie, you can still go back and try to get the rest of those reasonable medical expenses from that individual that you were treating. Yes, and the legislature made that clear in Section 23-45. But the attorneys are limited. Yes, that's true. They are, and they agreed to that. Unlike the medical providers. They agreed to that. They all agreed to that. All the bar associations were involved in that. In fact, Senator Cullerton stated the bill was agreed to in the House of Representatives by the Chicago Bar, Illinois State Bar, Trial Lawyers Association, Medical Society, and Illinois Hospital Association. They all agreed to these percentages. Well, they agreed to the percentages. You keep saying everybody agreed, all the bar associations agreed to the percentages. Where's the agreement? I don't see the agreement, obviously because we're here today. Where's the agreement as to when you start taking it out? If you look at 93rd Illinois General Assembly Senate Proceedings, May 30, 2003, at pages 118 to 119, you will see if you don't believe, and I believe that the plain language of the statutes is what is at issue here. There's no ambiguity. But assuming for the sake of argument you find any ambiguity, then you would have to look at the legislative intent. And the legislative intent clearly shows that the attorney's lien was to be capped at 30% for the first time in both the Act and the Attorney's Lien Act.  A maximum of 30% for attorney's liens, which include fees and costs, and 30% minimum for plaintiffs. Now, if the attorneys run up costs, and costs are huge, it's going to be the plaintiff's attorneys who end up losing. But that's what they agreed to, and that is what the legislature enacted. And that's found in the transcripts of the debate where? That is at 93rd Illinois General Assembly Senate Proceedings. I've read those. I don't think there's any. Well, I need to know. I want to know. What is it? Just finish the site. Go ahead. Okay. 93rd Illinois General Assembly Senate Proceedings, May 30, 2003, at 118-119. It's also in the county's brief at pages 22 to 23. Is there any discussion, though, in those legislative sessions? Yes. Here's my question. Is there any discussion in those sessions as to whether or not the attorney liens include not only their fees but costs? There's no discussion like that at all. So, I mean, it's not really – it's not there. Judge, again – We'll leave it up to the – Again, the plain language of these statutes, if the legislature had intended that it was only fees that would be included, they would have used the word fees in the Health Care Services Lien Act. They didn't. They put in attorney's liens. And attorney's liens, as of 1990, were held to include fees and costs both by the statute as well as the cases interpreting that statute, Carlson v. I believe it was Powers. Also – All right. Why don't you go ahead and wrap up then? Pardon? Why don't you go ahead and wrap up? Okay. Also, the – interestingly, the Larmina case here as well as the Wolf case were both dismissed without prejudice and without costs. So how can you possibly shift costs to an innocent third-party predator when there are no costs to shift? And you could find the Larmina without costs information in the record at 76, 78, and 193. You can find it in Wolf at record 84. And, again, it's the fee shifting that's at issue. It's not the Common Fund Act. And that's just one formula for shifting fees from an attorney to a predator. And it's the fee shifting that's disallowed because a lien holder is already limited by statute to a percentage, whereas a subrogation lien holder is not limited to a percentage. So what we have here is the Stanton court basically legislating their own formula, which doesn't even do what they intended to do, which was to make sure that the plaintiff receives 30 percent of the settlement or verdict or judgment. Moreover, it doesn't matter whether it's a settlement, verdict, judgment. The Monago court, which is a – All right. I think we need to hear from the other attorneys. Thank you very much. Thank you, Judge. Mr. Graham, do you have anything further? All right. Mr. Brown? Thank you. Two minutes, please. All right. I would like to pick up on something that was brought up by Judge McBride. The language that has been quoted to you about this agreement, I think it is a fair construction to say, A, there was a reference to an agreement that doesn't mean that the trial lawyers or the Chicago Bar Association agreed because of the word liens as opposed to attorneys' fees and costs to having their fees effectively gutted to something in the area of less than what they would make if they were a workers' comp attorney for a civil litigation case. The other thing I want to emphasize to you is the fact that there is a cap  or the fact that attorneys historically had one. What it has to do with is that historically attorneys would charge somewhere between 33 and 40 percent, and that was abrogated by the statute. Fine. There is a qualitative difference between saying that and saying that, oh, we agreed to have the cost embedded in the calculation of our attorneys' fees. And as I've shown in my brief, that is a disaster as far as incentive goes. Now, as far as the Wendland case goes, I don't think I have to say anything more. She's distinguished the case for you. The case has no bearing on the allocation of costs in this case, and it has no bearing on how the legislative construct or how the construction of this Act should be applied to the facts of my case. Stanton. All I want to say about Stanton is that what the court did was work backwards to ensure that the plaintiff had his recovery. And if that's what it takes to ensure that the plaintiff has recovery and that the attorney whose interest is inextricably woven with his clients has to be done, then that's what has to be done. Because otherwise you're going to have a disaster on two fronts. The purpose of the Act, which is to get funds, is going to be completely undermined and half the plaintiff's power and anyone that knows about an adverse decision that is contrary to pretty much what I proposed here is simply going to be not take these cases. It's just not going to happen, which means that the toughest cases, the cases where there's the most contentious and where someone is in most need of representation is going to be for naught. That's all I have to say. Thank you very much. Thank you, Tom. Ms. Klein, I promise you two minutes. Judge, the Stanton Court completely ignored binding stare decisis decisions of the Illinois Supreme Court, which are directly on point. Wendling, Maynard, Inouye, State, Cooper, all of them involved hospital creditors. All of them. And in all of them they all stated that they disallowed shifting attorney's fees from a debtor plaintiff to a creditor hospital. It's not the method or the formula used to shift the fees to a creditor. It's the fact that you're shifting fees to a creditor. Creditors are not limited to the race. They can try to collect what's owed to them through any means available. Wendling, Maynard, Inouye, State, Cooper, yes, they were common fund cases, but again, that's not really what's at issue. It's the fact that they all disallow fee shifting to a creditor who's already limited by statute to a percentage of the recovery. Moreover, the purpose of the act is to promote the health, safety, comfort, and well-being of the community by providing potential financial recovery to a provider who treats indigent patients. And it allows hospitals to enter into a debtor-creditor relationship without being able to ascertain the patient's ability to pay. And health care services liens promote health care for the poor of the state. So we would ask this court. Moreover, one other quick thing is that there's a new Section 50 that was enacted in the Health Care Services Lien Act, which is actually entitled subrogation. And that basically states that it codifies the common fund doctrine. And it states that subrogation lien holders must pay a prorated share of fees and costs to the attorney of the injured person. However, it expressly excludes liens under this act, meaning that health care services lien holders are not subject to prorata fees and costs. And furthermore, nowhere else in the statute does it state that health care services lien holders are subject to such fees and costs. And if it did, it would be absurd in light of Section 50. Thank you, Ms. Kleinberg. Thank you, Judge. Counsel, the court appreciates your excellent presentations. We'll take the matter under advisement. The court will stand at recess.